IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> CHAD HEATHCOTE, <br><br> Defendant. | No. 1:22-cr-232-CJN <br><br><br> **DEFENDANT'S SENTENCING MEMORANDUM** |

## **INTRODUCTION**

On November 4, 2022, Mr. Heathcote pled guilty, pursuant to a plea agreement, to parading, demonstrating, or picketing in a Capitol building in violation of 40 U.S.C. § 5104(e)(2)(G). A sentencing hearing is set for Mr. Heathcote on February 10, 2023.

This sentencing memorandum discusses Mr. Heathcote's involvement in the events on January 6, 2021. Mr. Heathcote submits videos as exhibits showing the two minutes that he was within an entryway to the U.S. Capitol. This memorandum also summarizes Mr. Heathcote's character as a hard-working, honorable individual who has overcome significant difficulties as a child to build a productive life as an adult. Considering all of the relevant factors, the Court should impose a sentence of 12 months' probation, which would be sufficient but not greater than necessary under 18 U.S.C. § 3553(a).

1

## REFERENCED EXHIBITS

| | |
|---|---|
| Exhibit A | U.S. Capitol from the North Door Appointment Desk, toward Brumidi Corridor, January 6, 2021 (10 minutes and 24 seconds long) |
| Exhibit B | YouTube "News2Share" Video Taken by Unknown Individual, January 6, 2021 (4 minutes 25 seconds long) |
| Exhibit D | Handheld Video #1 taken by Unknown Individual #1 outside the northeast entryway, January 6, 2021 (48 seconds long) |
| Exhibit E | Handheld Video #2 taken by Unknown Individual #1 outside the northeast entryway, January 6, 2021 (excerpt 1 minute long) |
| Exhibit F | Letter of Support from Julie Heathcote |
| Exhibit G | Letter of Support from Senior Associate Pastor Austin Weaver, New Hope Assembly of God |
| Exhibit H | Letter of Support from Paul Murphy |
| Exhibit I | Letter of Support from Steve Campbell |
| Exhibit J | Letter of Support from Aaron Robinson |
| Exhibit K | Letter of Support from Bryan Webber |

**ARGUMENT**

The issue for the Court is, considering the relevant factors under 18 U.S.C. § 3553(a), what sentence is sufficient but not greater than necessary. Because Mr. Heathcote's offense is a Class B misdemeanor, there is no applicable advisory sentencing guidelines range. The maximum term of imprisonment for this Class B misdemeanor is six months, and probation of up to five years remains an option.

For the reasons stated herein, the Court should impose a sentence of 12 months' probation.

**I.    A probationary sentence would reflect the seriousness, nature, and circumstances of the offense, and it would provide just punishment and avoid sentencing disparities.**

The events and circumstances of January 6th are well known by the Court. Mr. Heathcote's limited involvement on January 6th, however, likely is not. His involvement is captured in a few videos. These videos are submitted as Exhibits A, B, D, and E.

Here is what these videos show:

Shortly after 3:00 p.m., a number of individuals were exiting a door to the Capitol on the northeast side of the building. (Ex. D at 0:00–0:20; *see also* Ex. A at 0:26–1:35.) Two police officers were posted at this door on opposite sides. (Ex. D at 0:20.) The videos show that Mr. Heathcote (in a dark colored coat, his face visible, with no hat or mask on) approached the two officers. (Ex. D at 0:20–0:24.) He conversed with one of the officers and then the other. (Ex. D at 0:24–0:48; Ex. E at 0:00–0:04; *see also* Ex. B at 0:01–0:30.) At one point, the videos show Mr. Heathcote leaning in toward the officer on the left side of the door to allow the officer to speak into Mr. Heathcote's ear. (Ex. B at 0:28–0:32.) As Mr. Heathcote has admitted, one of these officers told him that "he did not want to go in this door."[1]  [ECF No. 25 at ¶ 9.] An

---

[1] In the videos submitted, Mr. Heathcote and the officer's conversations cannot be heard.

3

individual with a flag exited through the immediate door, saying: "You gotta go in the other side. Go in the other side, the door is still open." (Ex. E at 0:00–0:04; *see also* Ex. B at 0:32–0:37.) After the individual with the flag exited the door, an unknown individual in a red hat next to Mr. Heathcote held the door open. (Ex. E at 0:04–0:06; *see also* Ex. B at 0:36–0:38.) As the door was pulled open, Mr. Heathcote entered, and a number of other individuals followed while others are heard in the video shouting. (Ex. E at 0:04–0:15; *see also* Ex. B at 0:38–0:50.)

Inside the Capitol, security camera footage from the entryway shows Mr. Heathcote enter at about 3:10 p.m. (Ex. A at 1:58.) Mr. Heathcote was confronted by a police officer, who stopped Mr. Heathcote. (*Id.* at 1:58–2:04.) Mr. Heathcote then pulled his cellphone from his pocket, and he held it up while looking back toward the entryway to evidently see many other people entering through the door. (*Id.* at 2:04–2:14.) By this point, a line of officers congregated at the point where the entryway meets the hallway of the Brumidi Corridor on the first floor of the Capitol. (*Id.* at 2:14.) The entryway continued to fill with people, and Mr. Heathcote moved slightly forward toward the line of officers. (*Id.* at 2:14–2:30.) Mr. Heathcote remained with his phone above his head, for about the next minute, as the entryway filled up with people around him. (*Id.* at 2:30–3:25.) More officers congregated, and one officer shot a paintball gun with "smoke balls" above the crowd. (*Id.* at 3:09–3:20.) Seemingly realizing that he and the others in the entryway were soon to be forcibly removed by the police, Mr. Heathcote put his cellphone in his pocket. (*Id.* at 3:20–3:35.) The police officers then pushed the crowd out of the entryway. While being pushed out with the crowd, the security video shows no signs of resistance by Mr. Heathcote. (*Id.* at 3:35–3:50.) Information produced in discovery indicates that, once outside, Mr. Heathcote left the immediate area. While others remained and engaged in assaultive conduct with officers, Mr. Heathcote did not. He left.

4

Mr. Heathcote's involvement on January 6th is as one of the lower-level offenders from that day.  He did not break anything.  He did not throw anything.  He did not threaten officers.  He did not push officers.  He was not combative.  Now, did he violate the law when he entered the Capitol?  Absolutely – he has pled guilty to the instant offense.  But his illegal activity on January 6th is contained within the few videos submitted to the Court.  He was inside the Capitol for two minutes.  Nothing suggests that Mr. Heathcote was there to engage in violence or cause harm to others.  The nature and circumstances of this offense do not justify more than a probationary sentence.[2]

## II. A probationary sentence is warranted by Mr. Heathcote's history and characteristics and all other relevant factors.

The instant offense is, and will continue to be, a mark on Mr. Heathcote.  As an individual who has served his country, found solace in his faith, built a successful career, established a family, and otherwise lived an unblemished life, Mr. Heathcote has suffered mental anguish and has deep regret because of his involvement in this offense.

Prior to this offense, Mr. Heathcote had overcome much in his life.  He was raised in central Iowa by a mother who abused alcohol and drugs.  (PSR ¶ 29.)  His father was largely

---

[2] The government's sentencing memorandum draws the Court's attention to the cases involving Bradley Rukstales and Suzanne Ianni, and it argues that these two cases should be reference points for the Court.  If these cases are treated as reference points, however, they suggest a probationary sentence is warranted here because Mr. Rukstales and Ms. Ianni engaged in evidently more serious and aggravating conduct than Mr. Heathcote did.  As the government points out, Mr. Rukstales's case involved him throwing a chair in the direction of officers, and Mr. Rukstales had to be dragged out by two police officers behind a police line.  Mr. Rukstales was sentenced to 30 days' incarceration by this Court.  Mr. Rukstales's obstructive and destructive conduct was more serious than Mr. Heathcote's conduct on January 6th.  Likewise, Ms. Ianni led rioters in chants, participated in the overwhelming of police officers inside the Capitol that pushed officers back, and she did not express remorse.  Ms. Ianni's sentence by this Court was 15 days' incarceration.  Her conduct, too, was more serious than Mr. Heathcote's conduct.  A sentence of 30 days' imprisonment, as the government requests, would result in a sentencing disparity that fails to account for the less serious nature of Mr. Heathcote's conduct.

absent. (*Id.*) In his father's absence, his mother associated with men that abused her. (*Id.*) Mr. Heathcote resided with extended family members much of the time, and his needs as a child were minimally met. (*Id.*) When he was asked by the Probation Office about his childhood, Mr. Heathcote noted simply that he "survived." (*Id.*; *see also* PSR ¶¶ 36, 38.)

At age 17, Mr. Heathcote, seeking a better life, joined the military. He first served in the Army National Guard from 1997 to 2001, and then in the United States Navy from 2001 to 2007. (PSR ¶ 43.) He worked as a mechanic on M-1 tanks while in the Army National Guard and as a structural hydraulic mechanic on P3 Orions in the Navy. (*Id.*) He served his country honorably, and he was discharged as a Petty Officer Second Class with the Navy. (*Id.*) During his time in the military, he earned his pilot's license and obtained certifications in commercial and instrument flying and as a flight instructor.[3] (*See* PSR ¶ 42.)

After leaving the Navy, Mr. Heathcote attended Des Moines Area Community College. (PSR ¶ 41.) Although he did not earn a degree, in 2012, he obtained a job as an engineer. (PSR ¶¶ 41, 47, 48; Ex. F.) He worked at large agricultural technology companies in central Iowa as an engineer until 2019. In 2016 to 2019, he began to develop his own agricultural product. (PSR ¶ 37.) He then struck out on his own, starting his own business, related to a patented tractor-attached seed-placement system that he invented. (PSR ¶¶ 37.) He lost this business after a patent dispute with a larger company soon after, and he struggled with situational

---

[3] As a collateral consequence of Mr. Heathcote's involvement on January 6th, the FAA has informed Mr. Heathcote that his aircraft pilot and training licenses have been revoked, because the TSA has deemed Mr. Heathcote as posing a risk of air piracy or terrorism or a threat to passenger safety due to his involvement on January 6th described above. Mr. Heathcote intends to challenge this finding, which is based solely on his involvement on January 6th described above. Despite this instant offense, Mr. Heathcote does not pose any risks to anyone in the community in any fashion. For sentencing purposes, the Court should consider this as a likely collateral consequence of Mr. Heathcote's conviction, given the great discretion given to the TSA in making threat determinations.

depression and anxiety. (PSR ¶ 37.) Mr. Heathcote bounced back, and he obtained employment as an engineer manager. (PSR ¶ 46.) Over time, Mr. Heathcote trained himself to be a programmer, and he found a job working as a programmer for a company in central Iowa, working on a program to develop and close sales with customers. (PSR ¶ 45; Ex. I.)

Mr. Heathcote married his wife in 2018. They currently live with their six-year-old son in the greater Des Moines area. (PSR ¶ 30.) Mr. Heathcote has been on pretrial supervision on a personal recognizance bond, while residing at this address, since May 4, 2022. During his time on pretrial supervision, he has incurred no violations.[4]

Mr. Heathcote has been successful on pretrial supervision due to his own self-discipline, and also due to the support of those close to him. The individuals who best know him describe Mr. Heathcote as a hardworking, God-fearing, kind man. His wife states that one of the things that she loves about Mr. Heathcote is his "strong faith and high morals." (Ex. F.) One of Mr. Heathcote's pastors, who has come to know Mr. Heathcote well, writes that Mr. Heathcote has been "plugged in" to the church's food ministry, and writes that he has "sensed nothing but honesty and integrity from [Mr. Heathcote] in our conversations and time together." (Ex. G.) His pastor writes that he believes Mr. Heathcote is an upright man who he trusts. (*Id.*) A friend of Mr. Heathcote's writes that Mr. Heathcote is a "very caring person," who "will go out of his way to help you," and a "loving husband" and "great father." (Ex. H.) Another friend describes him as someone who consistently tries to be an "honorable person." (Ex. J.) Another individual who has befriended Mr. Heathcote since January 2021, states that Mr. Heathcote, despite their

---

[4] During this time, Mr. Heathcote has undergone twice-monthly random drug tests at a local drug testing facility. None of these drug tests have indicated the presence of drugs. Mr. Heathcote's performance, and his past, indicates that he is a low risk of future substance abuse, and the condition for mandatory drug testing should not be imposed on Mr. Heathcote during a period of supervision. *See* 18 U.S.C. §§ 3563(a)(5), 3583(d).

differences in political views, has always been a "mature, respectful individual amongst whomever he comes in contact." (Ex. K.)  Today, what drives Mr. Heathcote is his desire to improve the computer programs he has created and his desire to work and be a leader in his church community.  (Ex. I.)

As the letters of support note, Mr. Heathcote "wishes that he could turn back time and make the right decision." (Ex. G.)  Mr. Heathcote's decision to enter the Capitol was "not premeditated nor antagonistic in heart," and he is "repentant." (Ex. G.)   This case has placed a significant weight on Mr. Heathcote.  As someone who has tried to live his life without censure, Mr. Heathcote is simply, as his wife writes, "ready to move on and just want[s] peace." (Ex. F.)  While Mr. Heathcote, on the advice of counsel, has not yet made a statement to the government to express his remorse for his actions on January 6th, Mr. Heathcote plans to make an allocution statement directly to the Court to express his remorse at the sentencing hearing.

## CONCLUSION

Considering all of the relevant factors under 18 U.S.C. § 3553(a), the Court should sentence Mr. Heathcote to a period of 12 months' probation.

The Court should also order that Mr. Heathcote pay $500 in restitution, consistent with the plea agreement, in addition to the $10 special assessment.

Respectfully submitted,
  /s/   Andrew Graeve
Andrew Graeve, Assistant Federal Defender
FEDERAL PUBLIC DEFENDER'S OFFICE
400 Locust Street, Suite 340
Des Moines, Iowa 50309-2353
PHONE: (515) 309-9610
FAX: (515) 309-9625
E-MAIL: andrew_graeve@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I electronically filed this document with the Clerk of Court using the ECF system which will serve it on the appropriate parties.

    /s/  Theresa McClure